# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| MIKE EDWARDS, Individually and For Others Similarly Situated,<br>    Plaintiff,<br><br>v.<br><br>ROSEWOOD RESOURCES, INC.,<br>    Defendant. | **Case No. 5:20-cv-00314**<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Mike Edwards (Edwards) brings this lawsuit to recover unpaid overtime wages and other damages from Rosewood Resources, Inc. (Rosewood) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2.      Edwards worked for Rosewood as a Completions Consultant from approximately April 2019 through February 2020.

3.      Edwards and the other similarly situated workers who worked for Rosewood in the last three years regularly worked more than 40 hours a week.

4.      But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

5.      Instead of receiving overtime as required by the FLSA, Rosewood classified Edwards and other similarly situated workers as independent contractors and paid these workers a flat amount for each day worked (a day-rate) without overtime compensation.

6.      Neither Edwards, nor any other similarly situated workers who worked for Rosewood and received a day-rate, received a guaranteed salary.

7.     This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.     Venue is proper under 28 U.S.C. § 1391(b).

10.    Rosewood conducts substantial business operations in this District and Division.

11.    Edwards performed work for Rosewood in this District and Division. Specifically, Edwards worked in Gonzales County, Texas.

## PARTIES

12.    Edwards worked for Rosewood as a Completions Consultant from approximately April 2019 through February 2020.

13.    Throughout his employment with Rosewood, Edwards was classified as an independent contractor and paid a day-rate with no overtime compensation.

14.    Edwards's relationship with Rosewood was an employer/employee relationship.

15.    Edwards's written consent is attached as Exhibit A.

16.    Edwards brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Rosewood's day-rate system.

17.    Although these workers regularly worked more than 40 hours each week, Rosewood paid these workers a flat amount for each day worked and with no overtime compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

18.    The collective of similarly situated employees or Day Rate Workers sought to be certified is defined as follows:

**All oilfield workers employed by or working on behalf of, Rosewood Resources, Inc. who were classified as independent contractors and**

**paid a day-rate with no overtime at any time during the past three (3) years** (the "Day Rate Workers").

19.     The Day Rate Workers are easily ascertainable from Rosewood's business and personnel records.

20.     Rosewood is a Delaware corporation and may be served by serving its registered agent for service of process, **Corporation Services Company d/b/a CSC – Lawyers Inco., 211 E. 7th Street, Suite 620, Austin, TX 78701**, or wherever it may be found.

## COVERAGE UNDER THE FLSA

21.     At all relevant times, Rosewood has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22.     At all relevant times, Rosewood has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23.     At all relevant times, Rosewood has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Rosewood has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and oilfield equipment - that have been moved in or produced for commerce.

24.     In each of the last three years, Rosewood has had annual gross volume of sales made or business done of at least $1,000,000.

25.     At all relevant times, Edwards and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

26.     Rosewood treated Edwards and the Day Rate Workers as employees and uniformly dictated the pay practices applied to Edwards and the Day Rate Workers.

27.     Rosewood's misclassification of Edwards and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of the FLSA.

28.     Rosewood's uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

29.     Rosewood performs oil and natural gas exploration and production throughout the United States, including in Texas.

30.     To provide these services, Rosewood hired oilfield personnel (like Edwards) to work on its behalf, including Drilling and Completions Consultants, Safety Consultants, Rig Clerks and Superintendents.

31.     Rosewood classified many of these workers (including Edwards and the Day Rate Workers) as independent contractors.

32.     But Rosewood did not hire these workers on a project-by-project basis.

33.     Rather, Rosewood hired and treated these workers just like regular, even if sometimes short-term, employees.

34.     During the relevant period, these workers regularly worked for Rosewood in excess of 40 hours a week for weeks at a time.

35.     During the relevant period, these workers worked for Rosewood on a day-rate basis.

36.     During the relevant period, these workers were not paid overtime for the hours they worked for Rosewood in excess of 40 hours each week.

37.     These workers make up the proposed Putative Class.

38.     While exact job titles and job duties may differ, Rosewood subjected these workers to the same or similar illegal pay practices for similar work.

39.     For example, Edwards worked for Rosewood as a Completions Consultant from approximately April 2019 through February 2020 in Texas.

40.     Edwards performed work for Rosewood in Gonzales County, Texas; Karnes County, Texas; and McMullen County, Texas.

41.     Rosewood management-level employees interviewed Edwards for the Completions Consultant position directly.

42.     Rosewood management-level employees hired Edwards for the Completions Consultant position directly.

43.     After Rosewood hired Edwards, Rosewood required Edwards to contact and utilize a third-party staffing company as a payroll conduit for his work with Rosewood.

44.     Throughout his employment with Rosewood, Edwards regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Rosewood paid Edwards a day-rate for each day worked, regardless of how many hours he worked in a day or week.

45.     As a Completions Consultant, Edwards regularly worked more than 12 hours each day, often for weeks at a time.

46.     Edwards did not hire or fire employees.

47.     Edwards did not exercise discretion and judgment as to matters of significance.

48.     To the contrary, Edwards's work was governed entirely by Rosewood.

49.     The Day Rate Workers performed the same general job duties performed by Edwards.

50.     The Day Rate Workers worked the same or similar schedule worked by Edwards, regularly working more than 40 hours each week. Edwards's work schedule is typical of the Day Rate Workers.

51.     During the relevant period, Rosewood classified Edwards and the Day Rate Workers as independent contractors and paid them a day-rate basis with no overtime compensation.

52.     Edwards and the Day Rate Workers never received a salary.

53.     If Edwards and the Day Rate Workers did not work in a week, they did not receive a guaranteed amount of at least $455.

54.     Edwards and the Day Rate Workers received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

55.     Without the job performed by Edwards and the Day Rate Workers, Rosewood would not have been able to complete its business objectives.

56.     Edwards and the Day Rate Workers were economically dependent on Rosewood and relied on Rosewood for work and compensation.

57.     Rosewood determined the amount and type of compensation paid to Edwards and the Day Rate Workers.

58.     Rosewood set Edwards's and the Day Rate Workers' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for Rosewood.

59.     Edwards and the Day Rate Workers worked in accordance with the schedule set by Rosewood.

60.     Rosewood prohibited Edwards and the Day Rate Workers from subcontracting out the work they are assigned by Rosewood.

61.     Edwards and the Day Rate Workers had to follow Rosewood's policies and procedures.

62.     Edwards and the Day Rate Workers' had to adhere to the quality standards put in place by Rosewood.

63.     Edwards and the Day Rate Workers did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Rosewood provided Edwards and the Day Rate Workers with the equipment, programs, and facilities necessary for them to perform the work required of them.

64.     Edwards and the Day Rate Workers did not provide the significant equipment and programs they worked with daily, such as the oilfield equipment, office space, computers, and other necessary equipment.

65.     Rosewood made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Edwards and the Day Rate Workers work.

66.     Edwards and the Day Rate Workers do not incur operating expenses like rent, payroll, marketing, and insurance.

67.     Edwards and the Day Rate Workers did not market their services while employed by Rosewood.

68.     While employed by Rosewood, Edwards and the Day Rate Workers worked exclusively for Rosewood.

69.     Rosewood set Edwards's and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Rosewood.

70.     At all relevant times, Rosewood maintained control, oversight, and direction of Edwards and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

71.     Rosewood controlled Edwards's and the Day Rate Workers' pay.

72.     Likewise, Rosewood controlled Edwards's and the Day Rate Workers' work.

73.     Edwards's and the Day Rate Workers' work had to adhere to the quality standards put in place by Rosewood.

74.     Edwards and the Day Rate Workers were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

75.     Rosewood knew Edwards and the Day Rate Workers regularly worked for 12 or more hours a day for weeks at a time.

76.     Rosewood's records reflect the fact that Edwards and the Day Rate Workers regularly worked far in excess of 40 hours in certain workweeks.

77.     Edwards and the Day Rate Workers did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Edwards and the Day Rate Workers were paid on a day-rate basis.

78.     Rosewood set these workers' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Rosewood's policies and procedures.

79.     The work Edwards and the Day Rate Workers performed was an essential part of Rosewood's core businesses.

80.     Rosewood controlled Edwards's and the Day Rate Workers' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

81.     Rosewood controlled all the significant or meaningful aspects of the job duties Edwards and the Day Rate Workers performed by requiring them to strictly adhere to Rosewood's directives, policies, and procedures.

82.     Rosewood exercised control over the hours and locations Edwards and the Day Rate Workers worked, the tools and equipment they used, the data they analyzed, and the rates of pay they received.

83.     Even though Edwards and the Day Rate Workers may have worked away from Rosewood's offices without the constant presence of Rosewood supervisors, Rosewood still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

84.     Very little skill, training, or initiative was required of Edwards and the Day Rate Workers to perform their job duties.

85.     Indeed, the daily and weekly activities of Edwards and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Rosewood.

86.     Virtually every job function was predetermined by Rosewood, including the tools and equipment used, the data to review and compile, the schedule of work, and related work duties.

87.     Rosewood prohibited Edwards and the Day Rate Workers from varying their job duties outside of predetermined parameters and required Edwards and the Day Rate Workers to follow Rosewood's policies, procedures, and directives.

88.     Edwards and the Day Rate Workers performed routine job duties largely dictated by Rosewood.

89.     All of the Day Rate Workers performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

90.     All of the Day Rate Workers worked similar hours and were denied overtime as a result of the same illegal pay practice.

91.     All of the Day Rate Workers worked in excess of 40 hours each week and often worked more than 84 hours in a workweek.

92.     Rosewood uniformly denied Edwards and the Day Rate Workers overtime for the hours they worked in excess of 40 hours in a single workweek.

93.     Edwards and the Day Rate Workers were not employed on a salary basis.

94.     Edwards and the Day Rate Workers did not, and never did, receive guaranteed weekly compensation of at least $455 irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

95.     Rosewood's day-rate policy violated the FLSA because it deprived Edwards and the Day Rate Workers of overtime for the hours they worked in excess of 40 hours in a single workweek.

96.     Rosewood knew Edwards and the Day Rate Workers worked more than 40 hours in a week.

97.     Rosewood knew, or showed reckless disregard for whether, Edwards and the Day Rate Workers were improperly classified as independent contractors (as opposed to employees).

98.     Rosewood knew, or showed reckless disregard for whether, Edwards and the Day Rate Workers were not exempt from the FLSA's overtime provisions.

99.     Nonetheless, Edwards and the Day Rate Workers were not paid overtime.

100.    Rosewood knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

101.    Edwards brings this claim as a collective action under the FLSA.

102.    The Day Rate Workers were victimized by Rosewood's pattern, practice, and/or policy which was in willful violation of the FLSA.

103.    Other Day Rate Workers worked with Edwards and indicated they were classified and paid in the same manner (as independent contractors paid a day-rate with no overtime) and performed similar work.

104.    Based on his experiences with Rosewood, Edwards is aware that Rosewood's illegal practices were imposed on the Day Rate Workers.

105.    The Day Rate Workers are similarly situated in all relevant respects.

106.    The Day Rate Workers are blue-collar workers.

107.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

108.    The illegal day-rate policy that Rosewood imposed on Edwards was likewise imposed on all Day Rate Workers.

109.     Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA.

110.     The Day Rate Workers were similarly denied overtime when they worked more than 40 hours per week.

111.     The overtime owed to Edwards and the Day Rate Workers will be calculated using the same records and using the same formula.

112.     Edwards's experiences are therefore typical of the experiences of the Day Rate Workers.

113.     The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

114.     Edwards has no interests contrary to, or in conflict with, the Day Rate Workers that would prevent class or collective treatment.

115.     Like each Putative Class Member, Edwards has an interest in obtaining the unpaid overtime wages owed under federal law.

116.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

117.     Absent a collective action, many Day Rate Workers will not obtain redress of their injuries and Rosewood will reap the unjust benefits of violating the FLSA.

118.     Further, even if some of the Day Rate Workers could afford individual litigation against Rosewood, it would be unduly burdensome to the judicial system.

119.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Workers, as well as provide judicial consistency.

120.     The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

121.     Among the common questions of law and fact are:

      a.   Whether Rosewood employed the Day Rate Workers within the meaning of the FLSA;

      b.   Whether Rosewood's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

      c.   Whether Rosewood's violation of the FLSA was willful; and

      d.   Whether Rosewood's illegal pay practice applied to the Day Rate Workers.

122.    Edwards and the Day Rate Workers sustained damages arising out of Rosewood's illegal and uniform employment policy.

123.    Edwards knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

124.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Rosewood's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

125.    Rosewood is liable under the FLSA for failing to pay overtime to Edwards and the Day Rate Workers.

126.    Consistent with Rosewood's illegal day-rate policy, Edwards and the Day Rate Workers were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

127.    As part of its regular business practices, Rosewood intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Edwards and the Day Rate Workers.

128.    Rosewood's illegal day-rate policy deprived Edwards and the Day Rate Workers of the premium overtime wages they were owed under federal law.

129.     Rosewood was aware, or should have been aware, that the FLSA required it to pay Edwards and the Day Rate Workers overtime premiums for all hours worked in excess of 40 hours per workweek.

130.     There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

131.     This notice should be sent to the Day Rate Workers pursuant to 29 U.S.C. § 216(b).

132.     Those similarly situated employees are known to Rosewood, are readily identifiable, and can be located through Rosewood's records.

### CAUSE OF ACTION
### VIOLATION OF THE FLSA

133.     Edwards realleges and incorporates by reference all allegations in preceding paragraphs.

134.     Edwards brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

135.     Rosewood violated, and is violating, the FLSA by failing to pay Edwards and the Day Rate Workers overtime.

136.     Rosewood misclassified Edwards and Day Rate Workers for purposes of the FLSA overtime requirements.

137.     Edwards and the Day Rate Workers were Rosewood's employees for purposes of the FLSA overtime requirements.

138.     Rosewood was Edwards's and the Day Rate Workers' employer under the FLSA. Rosewood suffered or permitted Edwards and the Day Rate Workers to work for or on its behalf during the relevant period.

139.     Rosewood cannot meet its burden to demonstrate Edwards and Day Rate Workers are exempt from overtime under the administrative exemption.

140.    Rosewood cannot meet its burden to demonstrate the Edwards and Day Rate Workers are exempt from overtime under the executive exemption.

141.    Rosewood cannot meet its burden to demonstrate Edwards and Day Rate Workers are exempt from overtime under the professional exemption.

142.    Rosewood cannot meet its burden to demonstrate Edwards and Day Rate Workers are exempt from overtime under the highly compensated exemption.

143.    Rosewood misclassified Edwards and the Day Rate Workers as independent contractors.

144.    Rosewood failed to guarantee Edwards and the Day Rate Workers a salary.

145.    Rosewood failed to pay Edwards and the Day Rate Workers overtime.

146.    Rosewood paid Edwards and the Day Rate Workers a day-rate.

147.    Rosewood knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Edwards and the Day Rate Workers overtime compensation.

148.    Rosewood's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

149.    Accordingly, Edwards and the Day Rate Workers are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

150.    Edwards demands a trial by jury.

## PRAYER

WHEREFORE, Edwards, individually, and on behalf of the Day Rate Workers respectfully requests that this Court grant the following relief:

   a.   An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Day Rate Workers to permit them to join this action by filing a written notice of consent;

b.  A judgment against Rosewood awarding Edwards and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c.  Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

d.  An order awarding attorneys' fees, costs, and expenses;

e.  Pre- and post-judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Michael A. Josephson_

**Michael A. Josephson**
Texas Bar No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Taylor A. Jones**
Texas Bar No. 24306693
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Attorneys for Plaintiffs**